## Stauffer v. Miller Soap Co., Appellant.

*Trespass—Damages—Destruction of ice crop.*

In an action to recover damages for the destruction of an unharvested crop of ice, where there are no circumstances of aggravation, compensation is the measure of damages.

Where there is no market value of the ice at the time and place where it is destroyed, the measure of damages is the value of the property in the nearest market, having respect as well to time as to place, less the cost of getting it into such market, but including as a part of the cost the loss in handling and from shrinking.

In such a case it is competent for defendant to prove that the quantity of ice for which plaintiff claimed damages could not have been gathered from the pond and saved until there was a market for it; and he may also show that the quality of the ice was inferior to that which brought the prices stated by plaintiff's witnesses, and that the cost of cutting and housing was different from that claimed by plaintiff.

Argued May 20, 1892.    Appeal, No. 37, July T., 1892, by defendant, from judgment of C. P. Lancaster Co., Dec. T., 1889, No. 30, on verdict for plaintiff, Abraham C. Stauffer. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass to recover damages for destruction of unharvested crop of ice.

At the trial it appeared that the defendant was engaged in the manufacture of soap near a small stream, which, about three quarters of a mile further down its course, flowed into a pond constructed by the plaintiff for the purpose of making ice. In February, 1889, some large vats in which were deposited the spent lye from the soap works broke, and the lye was washed down the stream and destroyed the plaintiff's ice crop.

Martin Eckman, a witness for plaintiff, having testified in his examination in chief that he had paid $1.75 per ton for ice in 1889 was asked in cross-examination this question: " Was the quality of ice uncut and unharvested on the pond worth $1.75 a ton in 1889? " Objected to, objection sustained, exception. [2]

The same witness, having testified that ice at wholesale was worth $4 per ton in 1889 and that that price included cutting and housing, was asked by defendant's counsel: " Q. What

is the cost per ton to cut and house ice?" Objected to, objection sustained; exception. [4]

M. L. Davis, a witness for defendant, was asked: Q. "State whether or not it was possible in that freeze of 1889, to have gotten off a pond of three quarters of an acre, or, from this pond of Mr. Stauffer, the ice being five inches thick, or from five to six inches thick, one hundred and twenty tons of merchantable ice?" Objected to, objection sustained; exception. [12]

The defendant presented, among others, the following points:

"3. The plaintiff in this case cannot recover any imaginary or other profit from his ice crop. The measure of his damage, if he is entitled to recover, must be only compensation for the value of the ice as it was upon the pond at the time the injury was sustained. *Answer:* We answer that part of the point, that he cannot recover imaginary profits, in the affirmative. We affirm that part of the proposition that says he cannot recover any imaginary profits from his ice crop. Then, the next part is, 'the measure of his damage, if he is entitled to recover, must be only compensation for the value of the ice as it was upon the pond at the time the injury was sustained.' We cannot affirm the latter part as it is expressed—that portion of it." [30]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (2, 4, 12,) rulings on evidence, quoting bills of exceptions; (30) answer to point, quoting point and answer.

*B. F. Eshleman* and *Simon P. Eby*, for appellee.—Where the injury is unintentional, the value of the property destroyed is the measure of damages: Coleman's Ap., 62 Pa. 278; Herdie v. Young, 55 Pa. 176; Coxe v. England, 65 Pa. 212; Forsyth v. Wells, 41 Pa. 291; Richardson v. Northrup, 56 Barb. (N. Y.) 105.

*D. G. Eshleman, Charles I. Landis* with him, for appellant.—There were no circumstances in mitigation of damages for the wrong done. This case is not ruled by Penna. Coal Co. v. Sanderson, 113 Pa. 126, where the injury was the necessary

result of the development of the resources of the land, but rather by Robb v. Carnegie Bros., 28 W. N. 339, where the injury was the consequence of the owner's election of his site, and had no natural connection with the soil or subjacent strata.

OPINION BY MR. JUSTICE HEYDRICK, October 3, 1892.

As the plaintiff presented his cause in the evidence it was substantially a claim for the destruction of an unharvested crop of ice. There being no circumstances of aggravation, compensation was the measure of damages to which he was entitled. And if all analogies are to be regarded the value of the ice upon the pond at the time of its destruction was a proper subject of inquiry. In actions for cutting timber whatever the range of the evidence may be it must all tend to show the value of the standing trees or stumpage as it is called, at the time and place of the trespass: Herdie v. Young, 55 Pa. 176; Coxe v. England, 65 Pa. 212; and in actions of trespass for digging and carrying away minerals, and of replevin for minerals dug and taken away by a wrongdoer, the value of the minerals in place is the measure of damages: Forsyth v. Wells, 41 Pa. 291; Coleman's Appeal, 62 Pa. 252; Ege v. Kille, 84 Pa. 333. But authority ought not to be needed for a proposition so plain as that to allow a recovery for the enhanced value of anything by reason of the labor bestowed upon it by a trespasser is not to award compensation to the plaintiff but to punish the defendant. And it would be as little consonant with the rule of compensation to allow a plaintiff to recover for an enhanced value that might have been, but was not, given to property destroyed through the inadvertence or misfortune of the defendant. It however not unfrequently happens that there is no market value of property taken or destroyed at the time and place of the trespass. In such cases the value of the property in the nearest market and if necessary in an altered form, less the cost of getting it to that market and changing the form, is the measure of the damages—it is the value at the place of the trespass: Herdie v. Young, supra.

The only question in this case about which there appears to have been a serious controversy was as to the value of the ice crop destroyed and this involved an inquiry as to the quantity.

It does not appear that there was any market price for ice upon ponds, or elsewhere during the winter, in Lancaster county, but it is inferable from the testimony that it had a market value later in the year in the houses in which it was stored, and that in addition to the labor and expense of harvesting and storing there was considerable loss in cutting and handling and perhaps much more from shrinkage during the period it was necessarily stored before the market opened. In such case it is clear that the measure of damages would be the value in the nearest market, having respect as well to time as to place, less the cost of getting it into that market, and a part of the cost would be the loss in handling, and from shrinking, and therefore it is manifest that it would be gross injustice to the defendant to charge him at the market price in the spring or summer for every ton of ice that could be shown by an arithmetical calculation to have been upon the pond in February. According to Herdie *v.* Young, supra, it was competent for the plaintiff to show what ice was worth when and where there was a market for it, but having done so it was clearly competent for the defendant to prove that the plaintiff's ice would not have been worth so much upon the pond if it had been uninjured by the acts complained of; and this might be done by showing that it was of a quality inferior to that which brought the prices stated by plaintiff's witnesses as well as by showing the cost of cutting and housing, either by cross-examination of the same witnesses or by the direct testimony of others. And while to the inexperienced it might seem fair for the plaintiff to prove by a civil engineer the quantity of ice of a given thickness that was upon his pond, upon the assumption that it was of uniform thickness and quality all over the pond and seek to charge the defendant with the whole of it at the market price months later, it ought not to be doubted that it was competent for the defendant to show by witnesses acquainted with the business that so much ice could not have been gathered from that pond and saved until there was a market for it.

Thirty errors have been assigned, about one half of which are to the rejection of testimony which in the view herein expressed was competent. To notice them in detail would extend this opinion to an unreasonable length. The second,

fourth, and twelfth may, however, be taken as samples of those which are sustained. The thirtieth assignment is also sustained. There was no evidence from which the jury could have assessed damages for pollution of the stream except such as resulted from the destruction of the ice crop. While it appears that grass was killed upon adjoining farms and the owners suffered inconvenience from the loss of water for their stock, it does not appear that the plaintiff suffered any pecuniary loss from these causes. The measure of damages was therefore correctly stated in the point, the refusal of which is the subject of the thirtieth assignment of error.

The judgment is reversed and a venire facias de novo is awarded.